UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| GRAPHIC ARTS MUTUAL ) <br> INSURANCE COMPANY and UTICA ) <br> MUTUAL INSURANCE COMPANY, ) <br>    *Plaintiffs*, ) <br> ) <br> v. ) <br> ) <br> THE RUMSEY HALL SCHOOL INC., <br>    *Defendant*. | 3:21-CV-00557 (SVN) <br><br><br><br><br><br> February 4, 2022 |

**DECISION AND ORDER ON PLAINTIFFS' MOTIONS TO STRIKE AND TO BIFURCATE AND STAY**

Sarala V. Nagala, United States District Judge.

Graphic Arts Mutual Insurance Company ("Graphic Arts") and Utica Mutual Insurance Company ("Utica Mutual" and collectively with Graphic Arts, "Utica") have brought this action for a declaratory judgment finding that they have no duty to defend or indemnify The Rumsey Hall School ("Rumsey Hall") in *Tim Davis v. The Rumsey Hall School, Inc.*, C.A. No. 3:20-cv-01822-MPS (the "Davis Litigation") currently pending in this district. Rumsey Hall has filed counterclaims seeking a declaratory judgment that Utica is required to both defend and indemnify it in the Davis Litigation. Rumsey Hall also has alleged counterclaims for bad faith, breach of fiduciary duty, and violations of the Connecticut Unfair Insurance Practices Act ("CUIPA") and Connecticut Unfair Trade Practices Act ("CUTPA").

Currently before the Court are Utica's motions to bifurcate and stay discovery on certain counterclaims (ECF No. 25), as well as Utica's motion to strike allegations from Rumsey Hall's Counterclaims[1] (ECF No. 26). Specifically, Utica contends that bifurcating and staying discovery

---

[1] The parties' briefing on the instant motions refers to Counterclaim counts 1-3 as the "Coverage Claims," and Counterclaim counts 4-6 as the "Extra-Contractual Claims." To prevent confusion, the Court will follow the same convention herein.

on Rumsey Hall's Extra-Contractual Claims will prevent potentially needless discovery and save both the Court and the litigants substantial resources. Utica also claims that certain allegations in the Counterclaims violate Connecticut's prohibition on disclosing communications that take place during confidential mediations and thus must be stricken.

For the reasons described below, the Court disagrees with Utica on both contentions. Accordingly, Utica's Motion to Bifurcate and Stay Discovery (ECF No. 25) and Utica's Motion to Strike (ECF No. 26) are DENIED. The parties are ordered to confer and to file a new Rule 26(f) Report proposing a schedule for the case by **February 18, 2022**.

I.       FACTUAL BACKGROUND

Utica Mutual and Graphic Arts are insurers located in New Hartford, New York. ECF No. 1, ¶¶ 2-3. Rumsey Hall is a private school located in Washington Depot, Connecticut. *Id.* ¶ 5. Between 1982 and 1992, Utica issued a series of Commercial General Liability ("CGL") and School District Legal Liability ("SDELL" and together with CGL, the "Policies") insurance policies to Rumsey Hall. *Id.* ¶¶ 9-14. In July of 2019, Rumsey Hall notified Utica that a former student, Tim Davis, claimed he was sexually assaulted multiple times between the fall of 1989 and the spring of 1992, by Rumsey Hall's then dean of students Robert McGrew. *Id.* ¶¶ 18-19. Rumsey Hall requested that Utica provide a defense to the claims pursuant to the Policies. *Id.* ¶ 19. On November 5, 2019, Utica, through counsel, provided a twenty-five page "coverage letter" to Rumsey Hall. *Id.* ¶ 20; ECF No. 21-2. This letter stated that while Utica believed it had no duty to defend, it was willing to represent Rumsey Hall during pre-suit mediation with Mr. Davis, subject to certain conditions. *Id.* Rumsey Hall agreed to those conditions and accepted the representation for the pre-suit mediation. ECF No. 16 at 21, ¶¶ 51-53; ECF No. 1, ¶ 21.

The pre-suit mediation took place on November 20, 2020, but was unsuccessful in resolving Mr. Davis' claims. ECF. No. 1, ¶ 22. Subsequently, on December 8, 2020, Mr. Davis filed the Davis Litigation. *Id.* ¶ 23. The complaint in the Davis Litigation alleges among other things, that Rumsey Hall was negligent in its hiring, training, supervision, and retention of Mr. McGrew. *See Davis v. The Rumsey Hall Sch., Inc.*, No. 3:20-cv-01822-MPS, ECF No. 1. On February 4, 2021, Utica provided Rumsey Hall with a "Supplemental Coverage Position and Reservation of Rights." ECF No. 21-4. This document informed Rumsey Hall that while Utica continued to believe under the Policies "there is likely no coverage" or "coverage is limited," it would nevertheless continue providing Rumsey Hall with a defense in the Davis Litigation, while reserving all rights, including the ability to bring an action for declaratory judgment to determine the parties' respective rights under the Policies. *Id.* at 26. Utica filed the present action on April 22, 2021, seeking such a declaration.

On August 13, 2021, Utica filed the instant motions seeking bifurcation of the Coverage Claims and Extra-Contractual Claims; a stay of discovery on the Extra-Contractual Claims until resolution of the Coverage Claims; and to strike portions of paragraphs 53, 67, 71, and 98 from Rumsey Hall's Counterclaims. The Court addresses each motion in turn below.

    **II.    MOTION TO BIFURCATE EXTRA-CONTRACTUAL CLAIMS**

        A. <u>Legal Standard</u>

Bifurcation of trial is governed by Federal Rule of Civil Procedure 42(b). Rule 42(b) provides: "For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counter-claims, or third-party claims." Fed. R. Civ P. 42(b). Whether to bifurcate is a decision "that lies within the sound discretion of the trial court." *Belz v. Peerless Ins. Co.*, No. 3:13-cv-01315, 2014 WL 12758469,

at *1 (D. Conn. Oct. 10, 2014). "Separation of issues for trial is not to be routinely ordered," however, making bifurcation "the exception, not the rule" and requiring the moving party to "justify bifurcation on the basis of the substantial benefits that it can be expected to produce." *Svege v. Mercedez-Benz Credit Corp.*, 329 F. Supp. 2d 283, 284 (D. Conn. 2004). *See also Country Club of Fairfield, Inc. v. N.H. Ins. Co.*, No. 3:13-CV-00509 VLB, 2014 WL 3895923, at *3 (D. Conn. Aug. 8, 2014) ("[T]he moving party bears the burden of establishing that bifurcation is warranted.") When considering the potential benefits of bifurcation, the court should examine: "[1] whether bifurcation is needed to avoid or minimize prejudice, [2] whether it will produce economies in the trial of the matter, and [3] whether bifurcation will lessen or eliminate the likelihood of juror confusion." *Svege*, 329 F. Supp. 2d at 284; *see also Belz*, 2014 WL 12758469, at *1.

    B. Discussion

The Court finds that bifurcating the Coverage Claims from the Extra-Contractual Claims is inappropriate in this case. Utica, as the moving party, is required to demonstrate that bifurcation would likely avoid or minimize prejudice, produce economies in the trial of the matter, or lessen the possibility of jury confusion.[2] It has failed to make these showings.

The thrust of Utica's argument is that bifurcation will produce economies throughout the lifespan of the case. Specifically, Utica claims that "determination of the Coverage Claims likely will avoid the need to conduct discovery into, and decide, the Extra-Contractual Claims." ECF No. 25 at 9. In other words, in Utica's view, if Utica were to succeed on the Coverage Claims, there would be no need to litigate the Extra-Contractual Claims. For this argument to be persuasive, however, it relies on two separate assumptions: first, that Utica will prevail on the

---

[2] While Utica does not expressly address these factors, its argument touches on them in substance.

4

Coverage Claims; and second, that Utica's success on the Coverage Claims would obviate the need to litigate the Extra-Contractual Claims.

Regarding Utica's likely success on the merits of the Coverage Claims, the Court is not in a position to rule on this question at this time. *See Country Club of Fairfield, Inc.*, 2014 WL 3895923, at *5 (denying motion to bifurcate and stay where the proponent of the motion had "not yet filed a dispositive motion or articulated its position such that the Court could evaluate the relative strengths or weaknesses of its argument that the Club is entitled to no further coverage"). As in *Country Club of Fairfield*, Utica has provided no briefing, save for a few conclusory sentences, on the merits of the Coverage Claims, nor has there been a dispositive motion filed allowing the Court to examine the same.  Instead, Utica argues that if it were to win on the Coverage Claims, then substantial time and resources could be conserved.  But if the Court grants Utica's motion to bifurcate the proceeding and stay discovery on the Extra-Contractual Claims now and Utica ultimately fails in its efforts to obtain a favorable declaratory judgment on the Coverage Claims, this case would be set back, essentially to the beginning, and forced to start over. Utica's speculative argument regarding the purported likely success of the Coverage Claims does not justify the substantial risk of having to serially litigate the claims at issue here.  *See Belz*, 2014 WL 12758469, at *1; *Country Club of Fairfield, Inc.*, 2014 WL 3895923, at *5.

Further, even if Utica did prevail on the Coverage Claims, it is not clear to the Court that it would be required to dismiss all the Extra-Contractual Claims.  Specifically, Rumsey Hall asserts that its CUIPA/CUTPA and breach of fiduciary duty claims would survive an adverse declaratory judgment.[3]  ECF No. 30 at 7.  Here, it is important to distinguish between the different types of

---

[3] At oral argument, Rumsey Hall conceded that its bad faith claim could not proceed if the Court determines that the Policies do not provide coverage for the allegations in the Davis Litigation.  Thus, the Court need only examine whether the breach of fiduciary duty or CUTPA claims would survive.

5

claims cognizable under CUTPA. Specifically, Connecticut General Statutes § 38a-816(6) covers unfair claim settlement practices, while Connecticut General Statutes § 38a-816(1) covers misrepresentations and false advertising of insurance policies. While CUTPA claims brought under § 38a-816(6) alleging unfair claim settlement practices appear to fail in the absence of a contractual obligation between the insurance company and the insured, *see Farmington Vill. Dental Assocs., LLC v. Cincinnati Ins. Co.*, No. 3:20-CV-01647 (VAB), 2021 WL 3036902, at *14 (D. Conn. July 19, 2021), Rumsey Hall's claim under § 38a-816(1) is viable regardless of the outcome of the Coverage Claims. *See Lighthouse Associated Constr. / AP Constr., LLC v. Hanover Ins. Co.*, No. 3:15-CV-1600 (MPS), 2017 WL 1190363, at *7 (D. Conn. Mar. 30, 2017) (allowing CUTPA claim based on CUIPA § 38a-816(1) to proceed despite dismissal of contract claims).

As to Rumsey Hall's breach of fiduciary duty claim, Utica merely states, for the first time on reply, that if there is no coverage required under the Policies, Rumsey Hall cannot possibly prove damages on the breach of fiduciary duty claim. ECF No. 32 at 4. Utica provides no case law supporting its position and the Court is unconvinced that it would be required to dismiss the breach of fiduciary duty claim if Utica succeeds with its prosecution of the Coverage Claims. At this stage in the proceeding, the Court need not, and does not, determine who is correct on this issue. But the existence of this dispute highlights Utica's inability to make clear the "substantial benefits" that bifurcation can be expected to produce. *See Svege*, 329 F. Supp. 2d at 284. Therefore, Utica has failed to demonstrate that bifurcation will produce economies in the trial of this case.

Utica has also not shown that failing to bifurcate the issues will prejudice them. Utica argues that a lack of bifurcation will force them to engage in discovery for all Coverage and Extra-

Contractual Claims. *See* ECF No. 23 at 13. Utica appears to argue specifically that such an outcome would be prejudicial because Rumsey Hall only filed the Extra-Contractual Claims to make "discovery as broad and onerous as possible" and as "an apparent attempt to make Utica's chosen counsel a witness in this action." *Id.* at 14-15. Such a characterization of the Extra-Contractual claims is unconvincing.

Utica has presented no evidence that Rumsey Hall has acted in any way inappropriately in bringing its counterclaims. To begin, despite Utica's insistence that the Extra-Contractual Claims are nothing more than an attempt to turn discovery into a circus, Utica chose not to file a motion to dismiss the Extra-Contractual Claims. Instead, it filed an answer, allowing the claims to proceed to discovery. *See* ECF No. 21. Mere conjecture about the motives behind Rumsey Hall's claims or litigation strategy is both uncalled for and, as far as the Court can discern, irrelevant to the question at issue. If Utica believes the claims were brought for an improper purpose or without adequate justification, it was free to raise those arguments via the appropriate mechanism.

Further, in its briefing and at oral argument, Rumsey Hall made clear that it believes discovery in the Coverage Claims and the Extra-Contractual Claims will be duplicative. Although Utica contends that discovery concerning Utica's coverage decisions in other past cases would be relevant only to the Extra-Contractual Claims, Rumsey Hall argues that such discovery would in fact be relevant to the Coverage Claims. Specifically, Rumsey Hall believes that discovery related to Utica's decisions in past cases is relevant to its argument that the terms "bodily injury" and "occurrence" in the Policies at issue in this litigation are ambiguous. The Court expresses no opinion at this time as to whether such discovery requests are in fact proper, as it has not been fully presented with such a dispute. But, at this stage, it appears Utica could be required to respond to identical discovery requests regardless of whether the Court bifurcates and stays discovery on the

Extra-Contractual Claims. To the extent Utica argues that forcing it to participate in discovery on all claims will prejudice it, bifurcating the claims will provide no relief from this issue, given Rumsey Hall's position. Therefore, Utica has failed to show that absent bifurcation it would suffer any meaningful prejudice.

Finally, Utica has made no argument that trying all claims together would risk juror confusion. As it is the moving party's burden to show bifurcation is warranted, the absence of an argument from Utica on this point counsels against bifurcation.

Accordingly, because none of the factors in deciding whether to bifurcate the Extra-Contractual Claims weighs in favor of bifurcation, Utica's Motion for Bifurcation is DENIED.

### III.   MOTION FOR STAY OF DISCOVERY

#### A. Legal Standard

Unlike the ability to bifurcate trial, the ability to stay proceedings is not found in any rule, but "is incidental to the power inherent in every court to control the disposition of the causes on its docket." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). As such, when a party requests a stay of discovery, it is "treated as a request for a protective order under Rule 26(c)." *Stanley Works Israel Ltd. v. 500 Grp., Inc.*, No. 3:17-CV-01765 (CSH), 2018 WL 1960112, at *2 (D. Conn. Apr. 26, 2018). Rule 26(c) provides that a court may, issue a protective order for "good cause" and to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Whether to grant a motion to stay discovery "is committed to the sound discretion of the court based on a showing of good cause." *Metzner v. Quinnipiac Univ.*, No. 3:20-CV-00784 (KAD), 2020 WL 7232551, at *1 (D. Conn. Nov. 12, 2020). As with the motion to bifurcate, "the party seeking a stay of discovery bears the burden of showing good cause." *Morien v. Munich Reinsurance Am., Inc.*, 270 F.R.D. 65, 66–67 (D. Conn. 2010).

B. <u>Discussion</u>

In this case, the Court does not believe that a stay of discovery for the Extra-Contractual Claims is necessary. Under Federal Rule of Civil Procedure 26(c), a protective order should only issue where the movant has shown it would prevent "annoyance, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c). In the present action, as discussed above, Utica has presented no evidence that it is likely to suffer any of those consequences if the Court allows discovery to proceed. Thus, Utica fails to meet its burden.

As alleged in the Counterclaims, both the Coverage Claims and the Extra-Contractual Claims relate to the interpretation of similar insurance policies issued by Utica. At oral argument, Rumsey Hall's counsel made clear that Rumsey Hall believes the same claims personnel were involved in both the Coverage and Extra-Contractual Claims. Requiring such witnesses be deposed twice would not only be inconvenient for the parties and the witnesses, but would likely lead to numerous disputes over which questions are appropriate for the initial deposition, and which questions need to be reserved for a possible later deposition. There is no need to complicate discovery in this way.

Further, as noted above, Rumsey Hall made clear that the discovery it seeks for the Extra-Contractual claims is duplicative of the discovery it will seek on the Coverage Claims. Therefore, regardless of whether only the Coverage Claims or all claims proceed to discovery, Utica will likely be faced with identical discovery requests. At most, staying the Extra-Contractual Claims will allow Utica to argue certain requests are irrelevant and to move for another protective order at that time. This process is inefficient and unlikely to prevent "annoyance, embarrassment, oppression, or undue burden or expense," especially considering the Court's holding that at least some of the Extra-Contractual Claims may proceed even if the Court rules in favor of Utica on

Coverage Claims. It is far more efficient for the parties to propound all of their discovery requests at the same time.

In reaching this decision, the Court has considered Utica's position that Rumsey Hall may request documents that contain potentially privileged information. But "[t]o the extent an attorney acts as a claims adjuster, claims process supervisor, or claims investigation monitor, and not as a legal advisor, the attorney-client privilege does not apply." *First Aviation Servs., Inc. v. Gulf Ins. Co.*, 205 F.R.D. 65, 69 (D. Conn. 2001) (internal citations omitted). Whether any particular document sought in this case is privileged depends largely on what role, if any, Utica's attorneys had in the claim determination process, and on the context of the particular document. If Utica believes that Rumsey Hall's discovery requests seek privileged information and the parties cannot resolve the dispute on their own, it may seek relief from the Court at the appropriate time. But the fact that Rumsey Hall's discovery requests may hypothetically seek documents that could be protected by attorney-client or other privileges is not a reason to stay discovery in this action.

For these reasons, Utica's motion to stay discovery is DENIED.

### IV. MOTION TO STRIKE

#### A. Legal Standard

Motions to strike are governed by Rule 12(f) of the Federal Rules of Civil Procedure. Rule 12(f) provides, in pertinent part, that "[t]he court may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The Court may strike such material "on motion made by a party either before responding to the pleading, or if a response is not allowed, within 21 days after being served with the pleading." Fed. R. Civ. P. 12(f)(2).

Courts generally view motions to strike unfavorably and rarely grant them. *Tucker v. Am. Int'l Grp., Inc.*, 936 F. Supp. 2d 1, 15 (D. Conn. 2013). The party moving to strike a portion of a

pleading must show that "(1) no evidence in support of the allegations would be admissible; (2) that the allegations have no bearing on the issues in the case; and (3) that to permit the allegations to stand would result in prejudice to the movant." *Id.* at 16. "[O]rdinarily neither a district court nor an appellate court should decide to strike a portion of the complaint on the grounds that the material could not possibly be relevant on the sterile field of the pleadings alone." *Maratea v. Dep't of Educ.*, No. 3:14-cv-01785, 2016 WL 777902, at *4 (D. Conn. Feb. 29, 2016) (citing *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976)).

### B. Discussion

Initially, it does not appear that Utica's motion to strike was timely. Under Rule 12(f)(2), Utica would have needed to move to strike the material before responding to the Counterclaims. *See* Fed. R. Civ. P. 12(f)(2). The Counterclaims were filed on June 2, 2021. ECF No. 16. On July 7, 2021, Utica responded to the Counterclaims by filing its Answer to the Counterclaims. ECF No. 21. The motion to strike was filed on August 13, 2021, more than one month after the filing of the Answer to the Counterclaims. Thus, according to the plain text of Rule 12(f)(2), Utica's motion to strike is untimely and the Court could deny the motion on that basis alone. However, Rumsey Hall has not argued for denial on this ground and, as Rule 12(f)(1) allows the Court to strike information from the pleadings "on its own," the Court is not required to deny the motion due to its untimeliness. *See F.D.I.C. v. Collins*, 920 F. Supp. 30, 33 (D. Conn. 1996). Therefore, the Court will consider the merits of Utica's motion below. The parties are reminded, however, that going forward all filings should comply with the timing requirements of both the Federal and Local Rules.

Utica's motion to strike argues that paragraphs 53, 67, 71, and 98 in the Counterclaims "disclose confidential information concerning protected mediations" in violation of Connecticut

General Statutes § 52-235d(b) (the "Statute"). ECF No. 26 at 1. The Statute provides in relevant part:

> Except as provided in this section, by agreement of the parties or in furtherance of settlement discussions, a person not affiliated with either party to a lawsuit, an attorney for one of the parties or any other participant in a mediation shall not voluntarily disclose or, through discovery or compulsory process, be required to disclose any oral or written communication received or obtained during the course of a mediation, unless (1) each of the parties agrees in writing to such disclosure, (2) the disclosure is necessary to enforce a written agreement that came out of the mediation, (3) the disclosure is required by statute or regulation, or by any court, after notice to all parties to the mediation, or (4) the disclosure is required as a result of circumstances in which a court finds that the interest of justice outweighs the need for confidentiality, consistent with the principles of law.

Conn. Gen. Stat. § 52-235d(b). Relying on this Statute, Utica believes the following statements should be stricken from the Counterclaims:

(1)  "[Utica] did not authorize defense counsel to engage in meaningful settlement negotiations at the mediation. Utica itself did not engage in meaningful settlement negotiations at the mediation. As a result, the mediation was unsuccessful in resolving Mr. Davis's claims." ECF. No. 16 ¶ 53.

(2)  "At the mediations, Utica National takes unreasonable coverage positions in an attempt to reduce the amount of any settlement it may be obligated to pay the claimants." *Id.* ¶ 67.

(3)  "In numerous instances in which pre-suit mediations take place, as in the Davis matter, Utica National does not participate meaningfully in the mediation. Utica does not authorize defense counsel to engage in meaningful settlement negotiations at the mediations, nor does Utica itself engage in meaningful settlement negotiations at the mediations." *Id.* ¶ 71.

(4)  "[Utica] failed to authorize or engage in meaningful settlement negotiations at the pre-suit mediation of the Claim, exposing Rumsey Hall to a public lawsuit." *Id.* ¶ 98.

The Court recognizes the importance of protecting the confidentiality of the mediation process. *See In re Teligent, Inc.*, 640 F.3d 53, 57 (2d Cir. 2011) ("Confidentiality is an important feature of the mediation and other alternative dispute resolution processes."); *Bradley v. Fontaine Trailer Co. Inc.*, No. 3:06CV62 (WWE), 2007 WL 2028115, at *5 (D. Conn. July 10, 2007) ("The

parties [to a mediation] must trust that their disclosures, both oral and written, during mediation will remain confidential and that their candor will be protected.") (citing *Sharon Motor Lodge, Inc. v. Tai*, No. CV980077828S, 2001 WL 1659516, at *2 (Conn. Super. Ct. Dec. 3, 2001)).

Application of the statutory mediation privilege presents two issues: first, whether Utica is entitled to assert the privilege; and second, whether the disputed allegations fall within the scope of the privilege. Initially, the Court holds that Utica, which was a "participant in the mediation" that predated the Davis Litigation, can assert the statutory mediation privilege in the present litigation. Rumsey Hall, reading § 52-235d(a)'s definition of "mediation" narrowly, argues that Utica should not be entitled to claim the privilege because the mediation related to possible pre-suit settlement of the Davis Litigation, and not to the coverage dispute at issue in the present case. But § 52-235d(c) provides that "[a]ny disclosure made in violation of any provision of this section shall not be admissible in *any* proceeding." (emphasis added). Thus, if a communication falls within the mediation privilege, a "participant in the mediation" can assert the privilege in *any* proceeding. *See Dietz & Watson, Inc. v. Liberty Mut. Ins. Co.*, No. 14-4082, 2015 WL 356949, *6 (E.D. Penn. Jan. 28, 2015) (interpreting similar provision of Pennsylvania mediation privilege statute and noting that "[f]inding that the mediation privilege applies to participating insurance companies' representatives is essential to the success of the mediation sessions").

The remaining question for the Court is whether the particular disputed allegations in the Counterclaims fall within the scope of the privilege, specifically, whether they qualify as "oral or written communication[s] received or obtained during the course of a mediation." Unfortunately, case law interpreting § 52-235d(b) is extremely limited. *See Sharon Motor Lodge*, 2001 WL 1659516, at *3. In fact, it appears that no court has yet analyzed what constitutes a "communication" under the Statute.

In the absence of controlling state authority, this Court may "ordinarily interpret the state statute using the normal rules of statutory interpretation." *See Watson v. Caruso*, 424 F. Supp. 3d 231, 240 (D. Conn. 2019) (citing *Sealed v. Sealed*, 332 F.3d 51, 59 (2d Cir. 2003)).  Thus, in interpreting the Statute, the Court will "start with the text." *See Babb v. Wilkie*, 140 S. Ct. 1168, 1172 (2020).  The Court must attempt to "give effect, if possible, to every clause and word of a statute and to avoid statutory interpretations that render provisions superfluous." *United States v. Kozeny*, 541 F.3d 166, 174 (2d Cir. 2008); *see also Sharon Motor Lodge*, 2001 WL 1659516, at *4 (holding that were the court not to "allow disclosure of any communications made during the mediation, the exceptions set forth in § 52-235d(b)(1), (2), (3) and (4) would be rendered moot" and refusing to "read the statute so as to render meaningless the exceptions").

The Court must thus interpret the word "communication" from the Statute not standing alone, as Utica suggests, but rather together with the words preceding it—specifically, "oral or written."  The Court concludes that the disputed allegations in paragraphs 53, 67, 71, and 98 of the Counterclaims are not "oral or written communications" for purposes of § 52-235d(b).  First, none of these paragraphs contains specific verbal statements made, or written material exchanged, at or in preparation for the mediation.  Rather, as Rumsey Hall argued, each of the disputed allegations contains Rumsey Hall's *characterizations* of Utica's alleged conduct at various mediations, through adjectives such as "meaningful" and "unreasonable."  Such characterizations are not recitations of oral or written communications made in the course of the mediations, but rather Rumsey Hall's subjective opinions of what generally took place at the negotiations.  Further, the allegations in paragraphs 67 and 71 concern mediations in which Rumsey Hall did not participate.  The Court is unsure how Rumsey Hall could disclose written or oral communications from a

14

proceeding it did not even attend. When asked as much at oral argument, Utica was unable to provide an answer.

Additionally, the allegations in paragraphs 53, 67, 71, and 98 here stand in stark contrast to the allegations stricken in *Gunnery, Inc. v. Graphic Arts Mutual Insurance Co.*, No. 3:18CV1246 (WWE), 2018 WL 11278546, at *3 (D. Conn. Dec. 7, 2018).[4] There, the allegations that the Court struck directly described events that occurred during the mediation, including, among others, that "the student presented opinions of experts supporting her claims"; that the defendant and its counsel "were explicit that [they] refused to take into account Gunnery's interests in avoiding a lawsuit despite having taken control of the defense and settlement discussions"; that "the settlement participants believed that the 'reduced settlement amount was fair and reasonable under the circumstances'"; and that the two mediators "recommended settlement at the reduced settlement amount." *Id.* at *1-4. Such allegations clearly relayed explicit oral or written communications made during the mediation. The allegations that the Court did not strike in *Gunnery, Inc.*, on the other hand, are similar to those in Rumsey Hall's Counterclaims here. *Compare id.*, *with* ECF No. 16, ¶¶ 53, 67, 71, 98.

Utica's alternate argument that Federal Rule of Evidence 408 supports striking the allegations fares no better. The Federal Rules of Evidence relate to a motion to strike allegations only insofar as the Rules would make all evidence offered in support of those allegations "clearly inadmissible." *See D'Alosio v. EDAC Techs. Corp.*, No. 16-CV-769 (VAB), 2017 WL 1439663, at *3 (D. Conn. Apr. 21, 2017); *Lipsky*, 551 F.2d at 893 (a motion to strike under Rule 12(f) should

---

[4] Utica claims that, because Rumsey Hall's counsel was involved in litigating *Gunnery, Inc.*, Rumsey Hall's counsel engaged in an "intentional and improper litigation tactic" by including in Rumsey Hall's Counterclaims here the disputed allegations at issue. The Court believes that Rumsey Hall, rather than disregarding the holdings of *Gunnery, Inc.*, in fact adhered to them in drafting its Counterclaims in the present case. In any event, however, "the Court does not evaluate the conduct of counsel in deciding whether allegations should be stricken from a complaint." *Trade Links, LLC v. BI-QEM SA de CV*, No. 3:19-CV-00308 (KAD), 2020 WL 1335688, at *15 (D. Conn. Mar. 23, 2020).

15

be denied "unless it can be shown that no evidence in support of the allegation would be admissible"). While Rule 408 covers conduct as well as statements, it is far from clear in the present case that no evidence can be offered in support of the allegations at issue. For instance, Rumsey Hall alleges that the coverage letter sent by Utica regarding the current dispute will be used as evidence to support the allegations at issue. ECF No. 29 at 6. Further, Utica itself claims that paragraphs 67 and 71 relate to mediations in which Rumsey Hall did not participate. Thus, it must be the case that Rumsey Hall has some evidence, outside of communications that took place at the mediation, that it intends to use to prove these allegations. Accordingly, the Court is not convinced that no evidence could be offered to support Rumsey Hall's allegations. Thus, Federal Rule of Evidence 408 does not require the allegations at issue be struck from the complaint.

It is important to note, however, that the Court's decision today relates only to Utica's motion to strike. This decision says nothing about what discovery is appropriate, or what evidence will ultimately be admissible at trial. The Court will entertain motions related to discovery and evidentiary issues in due course as they arise.

## V. CONCLUSION

For the reasons described herein, Utica's Motions to Bifurcate and Stay and to Strike allegations in the complaint are DENIED. The parties are directed to submit a revised Rule 26(f) report no later than **February 18, 2022.**

**SO ORDERED** at Hartford, Connecticut, this 4th day of February, 2022.

                                     /s/ *Sarala V. Nagala*
                                     SARALA V. NAGALA
                                     UNITED STATES DISTRICT JUDGE